FILED
CLERK, U.S. DISTRICT COURT

FEB 16 2011

CENTRAL DISTRICT OF CALIFORNIA
BY _____ DEPUTY

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| FRANK CARRILLO,<br><br>　　　　Petitioner,<br><br>　　v.<br><br>DARRAL G. ADAMS, WARDEN<br><br>　　　　Respondent. | CASE NO. CV 09-05173 SVW (RZ)<br><br>ORDER ACCEPTING & AUGMENTING FINAL REPORT AND RECOMMENDATIONS OF UNITED STATES MAGISTRATE JUDGE AND DENYING CERTIFICATE OF APPEALABILITY<br><br>JS6 |

### I.  Introduction

　　Pursuant to 28 U.S.C. § 636, the Court has reviewed the Petition, the records on file and the Final Report and Recommendation of United States Magistrate Judge Ralph Zarefsky. The Court is issuing this supplemental order to discuss particular issues as to which Magistrate Judge Zarefsky granted Certificate of Appealability. The Court adopts Magistrate Judge Ralph Zarefsky's Final Report and Recommendation submitted May 11, 2010, recommending the denial of Frank

Carrillo's("Petitioner") habeas petition ("the petition"), but finds that this is not the appropriate case for a grant of Certificate of Appealability on these issues.

## II. Background

### A. Facts

The California Court of Appeal found the following facts underlying Petitioner's conviction:

On January 20, 2002, Daniel Ramirez was shot and killed outside of a taco stand in the San Fernando Valley. Ramirez sustained three gunshot wounds. At least two different guns were used in inflicting the wounds. Witness Karina Orozco informed police that she heard shots being fired from three guns, but saw only one person holding a gun and identified Petitioner as that person. Orozco also identified Petitioner at his preliminary hearing, but at trial retracted her previous identification and claimed she had been pressured by police to identify Petitioner.

Another witness, Lionel Rudy Chavarria also saw the shooting. Chavarria saw Petitioner standing with a group of men and heard four or five gunshots go off. He saw sparks in front of people, including in front of Petitioner's torso. Chavarria gave this information to police after being arrested eighteen days later in the hopes of securing leniency in his jail sentence.

Petitioner and Ramirez were members of rival gangs. A Los Angeles gang detail officer believed Ramirez's murder was a retaliatory gang shooting. Rose Garcia, who once belonged to the Columbus Street Gang and was Petitioner's former girlfriend testified that she was in an apartment with Petitioner ten days after Ramirez was shot. According to

Garcia, Petitioner asked if she had heard what happened to Ramirez and Petitioner said, "I had that taken care of." People v. Carillo, 163 Cal. App. 4th at 1031-32.

**B. Dismissal of Claims at Issue**

A discussion of Judge Zarefsky's report and recommendation is warranted before determining whether a Certificate of Appealability is appropriate. Judge Zarefsky rejects Petitioner's claim that the prosecutor had a duty to procure visas for potential witnesses or that the court had a duty to require the prosecutor to procure the visas, basing his opinion on the California Court of Appeal's denial of Petitioner's claim. The California Court of Appeal denied Petitioner's claim because in asserting his claim, Petitioner provided no proof of the witnesses' citizenship or difficulty traveling to the U.S. The defense also failed to act with due diligence in attempting to secure the attendance of the witnesses or in requesting assistance in securing the attendance of the witnesses. The defense's lack of diligence was evidenced by the fact that it did not move to procure the parole visas until April 2006, even though Petitioner had appeared in court twenty-five times beginning in August 2004 but never stated an interest in or requested assistance in obtaining the particular witness testimony.

Judge Zarefsky also rejects Petitioner's claim that the trial court erred by instructing the jury about the causation element for the firearm enhancement pursuant to California Penal Code section 12022.53(d). Petitioner asserts that the trial court should have instructed the jury in greater detail on the concept of proximate cause, and that had it done so, he would not have been found liable for the enhancement. Section 12022.53(d) provides in relevant part: "[A]ny

person who, in the commission of a felony... personally and intentionally discharges a firearm and proximately causes...death, to any person other than an accomplice, shall be punished by an additional and consecutive term of imprisonment in the state prison for 25 years to life." Cal. Penal Code § 12022.53(d). However, the jury in Petitioner's case was instructed that Petitioner could be liable for the enhancement if Petitioner's "or a perpetrator's act caused...the death of a person." (CT 391; RT 2794-50).

Judge Zarfesky found, agreeing with the California Appellate Court, that the trial court did err in its jury instruction regarding Section 12022.53(d). Ramirez was struck by rounds from two or three different guns and by failing to instruct the jury that concurrent causes could operate together to determine proximate cause, there was a likelihood that the jury could have convicted (i.e., the gun enhancement charge) without finding that Petitioner's conduct constituted a proximate cause. The state court thus found that additional jury instructions should have been given under state law.

Even though the California Appellate Court found error, it also decided that the error was harmless error. The California Appellate Court found the error harmless because the jury had decided that Petitioner, along with others, had fired a gun at the victim who died from multiple gun shot wounds, and thus that Petitioner would be liable under the concept of proximate cause even had the jury been correctly instructed as to the concept of proximate cause. Regardless of whether the jury found defendant guilty because he fired the fatal shot or aided and abetted the murder by firing at the victim, defendant was a proximate cause of the death. Habeas relief is only warranted if

4

Petitioner shows that the harmlessness determination was objectively unreasonable pursuant to AEDPA standards and that the error had a "substantial and injurious effect or influence in determining the jury's verdict." Inthavong v. Lamarque, 420 F.3d 1055, 1059 (9th Cir. 2005). Petitioner has not met the requirements to warrant habeas relief on this issue.

### III. Discussion

Under 28 U.S.C. § 2253(c)(2), a Certificate of Appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." The Supreme Court has held that this standard means a showing that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." See Slack v. McDaniel, 529 U.S. 473, 120 S. Ct. 1595, 146 L. Ed. 2d 542 (2000) (internal quotation marks omitted).

**(1) Immigration Visas**

While in general the issue of whether prosecutors should be required to request immigration visas from federal officials to secure potential defense witnesses has not been widely discussed in the relevant cases, Petitioner's case is not a case in which an appeal could further develop the issue.

Petitioner based his argument for this claim on the First Circuit's decision in United States v. Filippi, 918 F.2d 244 (1st Cir. 1990). The Filippi court held that the federal government cannot refuse to obtain an immigration exception for the defense to secure the testimony of an out-of-country, material defense witness whose presence

could not be secured by the defense without government intervention. The prosecutor's failure to obtain the visas despite the defense's timely request and court's instruction was considered constitutional error as a denial of defendant's due process rights. Id. at 247. However, ultimately, the Filippi court held that the defendant waived his rights when he agreed to continue with trial before the prosecutor had requested the visas. Id. at 248.

Petitioner's claim can be distinguished from Filippi because the defense failed to diligently act in obtaining the sought after witnesses testimony and visas, provided no proof of citizenship for either witness, and provided no proof that either witness would have difficulty traveling to the U.S. to testify at the trial. The California Court of Appeal noted that Prado, one of the witnesses, had traveled between California and Mexico three times in the prior two years, suggesting that there may have been no need for any emergency immigration assistance from government authorities. Petitioner failed to demonstrate defense diligence in seeking the testimony or in attempting to acquire the visas and failed to demonstrate an actual need for government intervention. The state court also denied Petitioner's motion to compel the prosecutor to ask federal immigration officials to exercise their discretion to issue a special "parole visa" so the defense's witnesses could enter the country for the sole purpose of testifying at trial. The state court in Petitioner's case thus was unlike the case in Filippi, as the Filippi court had instructed the prosecution to obtain the visas, while no such instruction was given to the prosecution in Petitioner's case.

Moreover, Petitioner is entitled to relief only if he demonstrates

that the state court unreasonably applied clearly established Supreme Court law. He has failed to do so.[1] Petitioner pointed to no clearly established Supreme Court law requiring the state to procure immigration visas for potential defense witnesses, and certainly did not point to any clearly established Supreme Court law requiring the state to do so when the defense has failed to demonstrate diligence or an actual need for government intervention.

Finally, as in Filippi, where the defendant waived his right by agreeing to continue with the trial although particular defense witnesses had not yet been secured, Petitioner likely also waived his right when he failed to raise the issue for nearly two years and provided no proof that the witnesses were essential except for an unauthenticated investigator declaration.

For the reasons stated above, Petitioner should not receive a Certificate of Appealability as to this issue as it is not an issue which "reasonable jurists could debate."

### (2) Causation Jury Instruction

Petitioner claims that the state court erred in instructing the jury about the causation element for the firearm enhancement pursuant to California Penal Code section 12022.53(d). Whether the state courts unreasonably applied clearly established federal law in addressing this

---

[1] The most relevant Supreme Court authority applicable to this issue is United States v. Valenzuela-Bernal, 458 U.S. 858, 102 S. Ct. 3440, 73. L. Ed. 2d 1193 (1982), which held that no constitutional violation occurs where the federal government deports non-material witnesses. Id. 458 U.S. at 872-73. However, Valenzuela-Bernal does not hold that a state has an obligation to procure the presence of potentially material witnesses. The state courts could reasonably have applied Valenzuela-Bernal and Filippi in denying petitioner's claim, and thus he is not entitled to habeas relief.

claim does not appear to be an issue suitable for a Certificate of Appealability. Regardless of whether the jury found Petitioner guilty because he fired the fatal shot or aided and abetted the murder by firing at the victim, Petitioner was a proximate cause of the death. The failure to correctly convey instructions to the jury in defining proximate cause thus would not have caused erroneous enhancement under section 12022.53(d). Therefore, the instructional error was harmless. Petitioner has not shown that the California Court of Appeal's determination that the error was harmless was objectively unreasonable and is therefore not entitled to habeas relief. The issue is not one which "reasonable jurists could debate" and should not be granted a Certificate of Appealability.

## IV. Conclusion

Aside from the grant of a Certificate of Appealability on the two above discussed issues the Court adopts Magistrate Judge Zarefsky's Report and Recommendation in its entirety. The Court concludes that given the specific facts of Petitioner's claim Petitioner has not made a substantial showing of the denial of a constitutional right as neither issue is "debatable among jurists of reason." See Miller-El v. Cockrell, 537 U.S. 322, 336 (2003). As a result, the Court finds that Petitioner is not entitled to a Certificate of Appealability as to either issue. See 28 U.S.C. § 2253(c)(2); Fed. R. App. P. 22(b).

IT IS SO ORDERED.

DATED: 2/16/11

STEPHEN V. WILSON
UNITED STATES DISTRICT JUDGE